IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 27, 2001

## STATE OF TENNESSEE v. GLENDA EVA TILLEY

**Appeal from the Criminal Court for Sullivan County**
**No. S43,007      Phyllis H. Miller, Judge**

**No. E2001-00264-CCA-R3-CD**
**August 9, 2001**

The defendant takes issue with the trial court's imposition of split confinement for her conviction of theft over $10,000. Based upon our review, we affirm the sentence imposed.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ROBERT W. WEDEMEYER, JJ., joined.

Nat H. Thomas, Kingsport, Tennessee; and Cary Taylor, Kingsport, Tennessee for the Appellant, Glenda Eva Tilley.

Paul G. Summers, Attorney General and Reporter; Patricia C. Kussmann, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and J. Lewis Combs, Assistant District Attorney General for the Appellee, State of Tennessee.

**OPINION**

In 1998, Glenda Eva Tilley, the defendant, and her husband befriended Verna Robinson, an elderly neighbor who lived alone on Valley Drive in Bristol, Tennessee. Ms. Robinson was 78 years old and suffered from Alzheimer's disease. During a ten-month period the Tilleys systematically pilfered over $20,000 of Ms. Robinson's life savings. Their larcenous scheme involved changing the victim's safe deposit box and bank accounts to add the defendant's name, withdrawing certificates of deposit owned by the victim, and changing the victim's will to name the defendant as the primary beneficiary. The defendant was unemployed throughout this time, nor did her husband work; he drew slightly more than $1,000 per month in workers' compensation and Social Security benefits.

When the theft was eventually discovered, the Tilleys admitted appropriating the victim's assets but maintained that they had assisted the victim. According to the defendant when

she was questioned by law enforcement officials, her husband had "convinced" her that she deserved the money. The criminal proceedings against the husband were discontinued after his death in late 1999. Approximately $7,500 of the money taken by the Tilleys was recovered and returned to the victim.

The defendant entered a plea of guilty to the charge of theft of property valued over $10,000. Tenn. Code Ann. §§ 39-14-103, -105 (1977). Evidently, the parties agreed to a minimum sentence of three years as a Range I standard offender, but the manner of service was reserved for determination by the trial court. At the sentencing hearing, the trial court imposed a split-confinement sentence; it suspended the three-year sentence and placed the defendant on intensive supervised probation, with special conditions,[1] for eight years to be preceded by 300 days incarceration in the Sullivan County Jail. In this appeal, the defendant complains that she should have received alternative sentencing and, moreover, that she carried her burden of showing entitlement to full probation. For the reasons that follow, we affirm the sentence imposed by the trial court.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review of the record with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991); *see State v. Hooper,* 29 S.W.3d 1, 5 (Tenn. 2000). "The burden of showing that the sentence is improper is upon the appellant." *Ashby*, 823 S.W.2d at 169. In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely *de novo. Id.* If appellate review, however, reflects that the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In arriving at a sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103(5),-210(a), (b) (1997); *State v. Holland*, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

---

[1] The special conditions included the requirements that the defendant pay full restitution, that she maintain full time employment, that she sell her 1999 automobile and, except for $500, pay the proceeds toward restitution, that she have no contact with the victim or the victim's family, and that she have no close contact with anyone over 72 years of age.

A defendant who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6) (1997). Our sentencing law also provides that "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation, shall be given first priority regarding sentences involving incarceration." *Id.* § 40-35-102(5). Thus, a defendant who meets the criteria of section 40-35-102(6) is presumed eligible for alternative sentencing unless sufficient evidence rebuts the presumption. However, the act does not provide that all offenders who meet the criteria are entitled to such relief; rather, it requires that sentencing issues be determined by the facts and circumstances presented in each case. *See State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).

The record before us reflects that the trial court engaged in a thorough review of the relevant sentencing principles and considerations. Accordingly, its determination is entitled to the presumption of correctness.

The defendant, a Range I offender, enjoyed the presumption of favorable candidacy for alternative sentencing for her Class C felony. *See* Tenn. Code Ann. § 40-35-102(6) (1997). Moreover, she was eligible for probation. *See id.* § 40-35-303(a) (1997). The 56-year old defendant relied on and testified at the sentencing hearing about various factors supporting an alternative sentence, such as (1) the absence of prior criminal convictions, (2) no serious bodily injury threatened or caused by her wrongdoing, (3) her remorsefulness, (4) her cooperation with law enforcement, (5) her willingness to make monthly restitution payments, (6) partial payment of her court costs, (7) her poor health, (8) potential for rehabilitation, (9) acceptance of responsibility, and (10) family and community support.

Initially, we address the defendant's complaint that she should have received full probation. Determining entitlement to full probation necessarily requires a separate inquiry from that of determining whether a defendant is entitled to an alternative sentence. *See State v. Bingham*, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000). A defendant "is required to establish her suitability for full probation as distinguished from favorable candidacy for alternative sentencing in general." *State v. Mounger*, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999); *see* Tenn. Code Ann. § 40-35-303(b) (1997); *Bingham*, 910 S.W.2d at 455-56. A defendant seeking full probation bears the burden of showing that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App .1990), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000).

The trial court in this case determined that full probation was inappropriate and would not be in the best interest of either the public or this defendant. The defendant, the trial court found, was an untruthful person who did not accept responsibility for her actions, thereby undermining her potential for rehabilitation. The trial judge noted that the defendant had failed to disclose that she

had been arrested in 1982 in North Carolina, along with her husband, for felony theft of a riding lawn mower. The defendant, moreover, had lied to the presentence officer about the source of funds used to purchase a 1999 Mitsubishi Mirage. The defendant represented to the presentence officer that the automobile had been purchased with the proceeds from the sale of a residence when, in fact, the victim's assets were used. The trial judge was equally skeptical of the defendant's professed remorse for what had happened, in part because she had made no serious efforts to obtain gainful employment. In this regard, the trial judge observed,

> Being sorry for the offense, if you were sorry for this offense, that Mitsubishi Mirage would have been gone. You would have been out here working at any job, washing dishes, mopping floors, flipping hamburgers, doing whatever on this Lord's earth you could do to pay back what meager amount you could pay back. No, you don't have any genuine sincere remorse.

Lack of candor and credibility are reliable indications of a defendant's potential for rehabilitation. *State v. Bunch*, 646 S .W.2d 158, 160 (Tenn. 1983); *State v. Zeolia*, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); *State v. Williamson*, 919 S.W.2d 69, 84 (Tenn. Crim. App.1995); *State v. Dowdy*, 894 S.W.2d 301, 305-06 (Tenn. Crim. App. 1994). The trial judge is in the best position to assess a defendant's credibility and potential for rehabilitation, and we will disturb neither that negative assessment in this case nor the resulting decision to deny full probation.

Next, we address the defendant's complaint that she should have received another form of alternative sentencing that involved no confinement. We agree with the trial court, however, that some measure of confinement was necessary to provide deterrence and to avoid depreciating the seriousness of the offense. With regard to denial of probation based upon deterrence, "trial courts should be given considerable latitude in determining whether a need for deterrence exists and whether incarceration appropriately addresses that need." *Hooper*, 29 S.W.3d at 10. Accordingly, the decision to incarcerate based on deterrence is presumed correct "so long as any reasonable person looking at the entire record could conclude that (1) a need to deter similar crimes is present in the particular community, jurisdiction, or in the state as a whole, and (2) incarceration of the defendant may rationally serve as a deterrent to others similarly situated and likely to commit similar crimes." *Id*.

The trial court in this case found a need for deterrence based on two of the non-exclusive factors discussed in *Hooper*. First, the trial court concluded that the defendant's "crime was the result of intentional, knowing, or reckless conduct or was otherwise motivated by a desire to profit or gain from the criminal behavior." *Id*. at 11. Second, the trial court found that the defendant was a member of a criminal enterprise that included her husband. "It was a criminal enterprise," the trial court recited, "that went on and on and on and was directed even to take effect after this woman's death." We conclude that the trial court properly determined that some deterrence may be obtained by the defendant's incarceration, and we further note that the defendant's incarceration was not based solely upon deterrence.

With respect to the seriousness of the offense, the defendant fleeced an elderly and mentally infirm lady. The trial court found the defendant's behavior especially reprehensible and stated for the record,

> This was not like this woman came across a bag of money lying out in this poor old lady's yard and decided to take it. This was a scheme that I find was developed when they figured that this elderly woman had Alzheimer's and didn't have any close relatives nearby looking after her, that this defendant and her husband, I mean they left no stone un-turned. None. No stone un-turned, right down to the jewelry on her poor old body when she's put in her grave, to get that too. You got her CD. You got her bank accounts. You're getting her real estate, getting her house through the will, and the old lady left her jewelry to her granddaughter in the will, but we have Ms. Tilley knowing what's in the will, goes and tells the funeral director that this poor old woman wants the jewelry that's on her body to go [sic] her. . . . I don't know any better way to describe you and your husband, as two vultures. You see a wounded body down, a wounded animal down, and you two swoop in to pick the bones completely clean.

The record, we believe, supports the serious nature of this offense. *See State v. Charles Chesteen*, No. E1999-00910-CCA-R3-CD, slip op. at 10 (Tenn. Crim. App., Knoxville, June 8, 2000) (defendant stole large sums of money from elderly, incapacitated ladies and from children whose funds were entrusted to him); *State v. Cynthia D. Stacey*, No. 03C01-9803-CR-00091, slip op. at 2 (Tenn. Crim. App., Knoxville, May 24, 1999) (defendant preyed upon two elderly people and abused position as home health care worker to gain access to checks and bank cards) *perm. app. denied* (Tenn. 1999).

Our *de novo* review convinces us that the defendant has not overcome the presumptive correctness of the sentence imposed in this case. The judgment and sentence are hereby affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE